# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID V. JORDAN, | ) | |
|     Plaintiff | ) | Civil Action No. 16-307 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| JOHN WETZEL, et al., | ) | |
|     Defendants | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

### A. Relevant Procedural and Factual History

Plaintiff David V. Jordan, a prisoner formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI Forest"),[1] initiated this civil rights action on December 21, 2016, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an amended complaint on August 25, 2017, which superseded the original complaint and is the operative pleading in this case. [ECF No. 80]. The amended complaint is a lengthy 28-page document containing 184 paragraphs and multiple claims against thirty-nine (39) Defendants, all of whom were employed at SCI-Forest during the relevant time periods at issue: Superintendent Michael D. Overmyer ("Overmyer"); Sarah Siegel ("Siegel"); Jeffrey Horton ("Horton"); Deputy Superintendent Derrick F. Oberlander ("Oberlander"); CCPM Ireland ("Ireland"); Paul A. Ennis ("Ennis"); Ernesto Mongelluzzo ("Mongelluzzo"); Captain Dimperio ("Dimperio"); Angelo Lopez ("Lopez"); Security Captain Carter ("Carter"); Lieutenant Murin ("Murin"); Sergeant Mravintz ("Mravintz"); Sergeant Gilara ("Gilara"); Sergeant Cochran

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Fayette in LaBelle, Pennsylvania.

("Cochran"); Corrections Officer Neal ("Neal"); Corrections Officer Dioguardi ("Dioguardi"); Corrections Officer Snyder ("Snyder"); CO Smail ("Smail"); Corrections Officer Kradel ("Kradel"); Mailroom Supervisor Beach ("Beach"); Mailroom Inspector Towner ("Towner"); Food Service Manager Dittman ("Dittman"); Doctor Pavlock ("Pavlock"); Lisa Zupsic ("Zupsic"); Heaher G. McKeel ("McKeel"); Nurse Hulst ("Hulst"); Nurse Rowan ("Rowan"); Nurse Hill ("Hill"); Gary Prinkey ("Prinkey"); Kim Smith ("Smith"); Nurse Jordan ("Jordan"); Kevin C. Cowan ("Cowan"); Judy Sheesley ("Sheesley"); Corrections Officer Murray ("Murray"); Booher ("Booher"); Niederriter ("Niederriter"); Zuck ("Zuck"); Mailroom Inspector Wolfe ("Wolfe"); and Sergeant Stoddard ("Stoddard"). For ease of reference, Defendants Zupsic, Pavlock, and McKeel will be collectively identified as "Medical Defendants," while the remaining Defendants will be collectively referred to as "DOC Defendants."

Plaintiff identifies the following claims:

(1) "Campaign of Retaliatory Harassment" against all Defendants;

(2) "Campaign of Retaliation" against all Defendants;

(3) Eighth Amendment denial of exercise against Defendants Ireland, Mongelluzzo, Horton, Ennis, Smith, Hulse, Jordan, Lopez, Zupsic, Mravintz, McKeel, Oberlander, Overmyer, Murin, Cochran, Snyder, Pavlock, Sheesley, and Cowan;

(4) Eighth Amendment deliberate indifference to serious medical needs against Defendants Neal and Stoddard;

(5) Eighth Amendment deliberate indifference to serious medical needs against Defendants Neal, Stoddard, Hill, Rowan, Pavlock, Prinkey, and Dioguardi;

(6) Eighth Amendment failure to intervene against Defendant Stoddard;

(7) Eighth Amendment excessive use of force against Defendant Neal;

(8) Eighth Amendment denial of warmth against Defendants Overmyer, Horton, Oberlander, Ennis, Mongelluzzo, and Ireland;

(9) Eighth Amendment unsanitary living conditions against Defendants Overmyer, Lopez, Sheesley, Neal, Ennis, Horton, Ireland, Pavlock, Zupsic, Prinkey, Rowan, Smith, Oberlander, Jordan, Gilara, and Hill; and

(10) Conspiracy to retaliate against all Defendants.

(ECF No. 80, Amended Complaint, at pp. 21-26).

Presently before the Court are motions to dismiss filed by the DOC Defendants [ECF No. 83] and the Medical Defendants[2] [ECF No. 88]. In their motion, the DOC Defendants assert that the amended complaint should be dismissed in its entirety because it contains disjointed allegations and claims that are overly broad and complex and, thus, runs afoul of Federal Rules of Civil Procedure 8 and 20. Alternatively, the DOC Defendants move to dismiss portions of the amended complaint on substantive grounds for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The Medical Defendants move to dismiss Plaintiff's claims against them, arguing that he has failed to allege their personal involvement in any of the constitutional violations at issue. Plaintiff has filed a brief in opposition to each motion (ECF Nos. 97 and 110, respectively), and a supplemental brief in opposition to the DOC Defendants' motion [ECF No. 102]. This matter is now ripe for consideration.

## II. DISCUSSION

Because the DOC Defendants' principal argument that the amended complaint should be dismissed on procedural grounds is potentially dispositive of the entire case, the Court will turn

---

[2] Included among the Medical Defendants joined in the motion are Barry L. Eisenberg, Nurse Engelhardt and Doctor Symon, all of whom were named as Defendants in the original complaint, but were subsequently omitted from the amended complaint. Plaintiff has verified in his opposition brief that said Defendants are no longer part of this action. (ECF No. 110, at p. 3). Thus, the Medical Defendants' motion is moot insofar as it seeks to have claims dismissed as to these Defendants.

to it first.

### A.     Federal Rules of Civil Procedure 8 and 20

Rule 8 requires that a complaint contain a short and plain statement setting forth (1) the basis for the court's jurisdiction, (2) the claim or claims showing that the pleader is entitled to relief, and (3) a demand for the relief sought. "Although there is not a heightened pleading standard in Section 1983 cases, pro se plaintiffs must sufficiently allege a deprivation of a right secured by the Constitution." Spence v. Schafer, 2013 WL 1364025, at * 3 (W.D.Pa. Mar. 7, 2013), citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir.1993)).

A court may dismiss a complaint for failure to comply with Rule 8 "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "Dismissal on Rule 8 grounds is 'usually reserved for those cases in which the complaint is so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" Young v. Centerville Clinic, Inc., 2009 WL 4722820, at * 3 (W.D.Pa. Dec. 2, 2009), citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988). "To merit dismissal, the complaint must be so long and confusing as to 'overwhelm the defendants' ability to understand or to mount a response.'" Id., citing Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir.2004).

Here, the DOC Defendants assert that "[t]here is no coherent, legal, logical, topical or temporal connection between the various claims, except that Plaintiff purports to be the target of them all." (ECF No. 84, at p. 9). The Court disagrees. In fact, the Court finds that Plaintiff has been fairly detailed and organized in his account of Defendants' alleged conduct, and has presented the same in a somewhat logical and chronological manner. Moreover, despite their

assertion that the complaint "is the antithesis of simple, concise, and direct," it is apparent that Defendants are able to easily discern the nature and legal basis of each claim and the Defendant(s) against whom each is asserted, and further understand that all claims fall within Plaintiff's overarching claim of retaliation. Thus, the Court finds that the amended complaint adequately complies with the requirements of Rule 8.

Under Rule 20 of the Federal Rules of Civil Procedure, "persons […] may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or serious of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2). With regard to the same transaction requirement, "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.... The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." Spence, at * 6 (citations omitted). Furthermore, the requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. Salley v. Wetzel, 2013 WL 3157588 (M.D. Pa. 2013), aff'd 565 Fed. Appx. 77 (3d Cir. 2014).

Here, Plaintiff alleges several Eighth Amendment claims arising from a number of separate incidents that allegedly occurred at SCI-Forest over a seven-month period, from August 2015 through March 2016, including denial of exercise, deliberate indifference, excessive force, failure to intervene, denial of warmth, and unsanitary living conditions. However, Plaintiff also alleges that all of these claims arise out of Defendants' desire to harass him and retaliate against him for the filing of numerous grievances and lawsuits. Plaintiff maintains that these separate

incidents are part of a continuous course of conduct. Thus, despite the expansive scope of Plaintiff's allegations, the interests of judicial economy are best served by allowing joinder of these claims so that this Court can best preside over Plaintiff's claims of retaliation.

For the foregoing reasons, therefore, the DOC Defendants' motion to dismiss Plaintiff's amended complaint on procedural grounds will be denied. As a result, the Court will now turn to the substantive grounds cited by each set of Defendants for dismissing particular claims and/or Defendants from this case.

### B. Personal Involvement

The Medical Defendants seek dismissal of all claims alleged against them in the amended complaint based upon Plaintiff's failure to "allege any facts that establish what they did personally to injure him." (ECF No. 89, at p. 5). The DOC Defendants similarly argue that Plaintiff has failed to adequately allege the personal involvement of the following Defendants in any of the complained-of misconduct, thus warranting their dismissal from this case: Overmyer, Ennis, Siegel, Dimperio, Gilara, Cochran, Dioguardi, Zuck, Snyder, Smail, Kradel, Beach, Towner, Wolfe, Niederriter, Dittman, Hulse, Jordan, Smith, and Cowan.

It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013), citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit … [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed. Appx. 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

6

### 1.    Medical Defendants

The Medical Defendants assert that, although they are named in the caption of the amended complaint, Plaintiff has failed to assert any specific allegations against any of them upon which a cognizable cause of action can be based. The Court agrees.

 The only references to one or more of the Medical Defendants are contained in paragraphs 15 (all), 36 (Zupsic and Pavlock), and 83-84 (Pavlock only) of the amended complaint. Paragraph 15 merely lists the names of the Medical Defendants with a number of other DOC Defendants who allegedly engaged in "a campaign of retaliatory treatment and retaliatory harassment against plaintiff" by denying him access to "fresh air and one (1) hour yard or exercise" while he was in solitary confinement for approximately 100 days; however, Plaintiff fails to assert any specific allegations detailing how each of the Medical Defendants participated in the alleged retaliatory conduct. Similarly, in paragraph 36, Plaintiff merely lists the names of Defendants Zupsic and Pavlock with a number of other DOC Defendants alleged to have engaged in "a campaign of retaliatory harassment against plaintiff" by forcing him to "choose between wearing handcuffs in order to get a shower and removing a medically prescribed arm-sling;" yet, there are no other allegations specifying how Defendants Zupsic and Pavlock participated in the alleged retaliatory conduct.

Finally, paragraphs 83-84 include Defendant Pavlock among a list of Defendants who allegedly denied him medical attention for his "further-injured broken left hand;" however, Defendant Pavlock is the only Defendant among those listed who is not named in the preceding paragraphs containing specific allegations of the complained-of misconduct. Thus, there is no indication as to why he is even included.

In short, the amended complaint fails to establish the personal involvement of any of the Medical Defendants in any of the alleged constitutional violations. Consequently, the Medical Defendants' motion to dismiss will be granted and said Defendants will be dismissed from this case, accordingly.

### 2. DOC Defendants

Plaintiff has likewise failed to adequately allege the personal involvement of Defendants Dimperio, Gilara, Cochran, Snyder, Hulse, Cowan, Jordan, Smith, Dioguardi, Zuck, Smail, Dittman, Kradel, Beach, Towner, Wolfe, and Niederriter.[3]

#### a. Defendant Dimperio

The only allegations against Defendant Dimperio arise from his alleged "approval" of a "fictitious misconduct report" that was filed against Plaintiff by Defendant Booher on September 8, 2015, and his subsequent ordering of modified meals for Plaintiff for three days. (ECF No. 80, at ¶¶102, 108). Plaintiff makes both of these allegations in the context of a retaliation claim against Defendant Dimperio; however, neither of these allegations rise to the level of an adverse action for purposes of establishing retaliation. First, the misconduct record attached to the amended complaint reveals that the "false" misconduct at issue was dismissed without prejudice and, thus, resulted in no penalty against Plaintiff. (See ECF No. 80-7, at pp. 2-3). Thus, no adverse action was suffered as a result of the "false" misconduct approved by Defendant Dimperio. See Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011) (holding that, in the absence of a penalty arising from an allegedly false misconduct, no adverse action is suffered).

---

[3] The DOC Defendants also seek dismissal of Plaintiff's claims against Defendants Overmyer, Ennis, and Siegel based upon their lack of personal involvement; however, the Court finds that Plaintiff has set forth sufficient allegations against each to establish their personal involvement at he pleading stage. In particular, Plaintiff has adequately alleged, *inter alia*, that all of these Defendants denied him access to his legal paperwork in retaliation for his grievances and lawsuits against them. (ECF No. 80, at ¶¶ 25-28, 33).

Second, as to the receipt of modified meals, Plaintiff has not alleged that he suffered any ill health effects or suffered any additional risk of harm associated with the meals to implicate an adverse action.

### b. Defendant Gilara

The only allegations against Defendant Gilara are contained in paragraphs 36, 39, and 181 of the amended complaint. In paragraph 36, Defendant Gilara is included among a list of Defendants alleged to have engaged in a campaign of retaliatory harassment; yet, the only specific allegation against him is that he provided Plaintiff with a plastic bag to place over his arm cast in the shower, and ordered Plaintiff to comply with all other cell removal and shower procedures. (ECF No. 80, at ¶ 39). This allegation does nothing to establish retaliatory conduct. As for paragraph 181, Defendant Gilara is merely included in a list of Defendants who allegedly "engaged in creating unsanitary living conditions to constitute cruel and unusual punishment," without any further allegations detailing the alleged actions taken by him in this regard.

### c. Defendants Cochran, Snyder, Hulse, and Cowan

Defendants Cochran, Snyder, Hulse, and Cowan are among a number of Defendants listed in paragraph 15 of the amended complaint who allegedly engaged in "a campaign of retaliatory treatment and retaliatory harassment against plaintiff" by denying him access to "fresh air and one (1) hour yard or exercise" while he was in solitary confinement for approximately 100 days; however, Plaintiff fails to assert any specific allegations detailing how each Defendant participated in the alleged retaliatory conduct. No other allegations are specified against any of these Defendants.

### d. Defendants Jordan and Smith

Defendants Jordan and Smith are among the Defendants named in both paragraphs 15 and 36 of the amended complaint, discussed above. In addition, Defendant Smith is summarily included among several Defendants named in paragraph 181 of the amended complaint, also discussed above. The amended complaint is devoid of any further allegations against either Defendant detailing how each participated in any of the alleged wrongdoing.

### e. Defendant Dioguardi

Plaintiff alleges that Defendant Dioguardi denied him access to medical care and engaged in retaliatory harassment against him when she wrote "sign up for sick call" in response to his inmate request complaining about stabbing pain in his left hand. (ECF No. 80, at ¶¶ 85, 87-88, and 173). However, this allegation, standing alone, fails to implicate either an Eighth Amendment violation or retaliatory conduct.

### f. Defendant Zuck

Defendant Zuck is alleged to have participated in the overarching campaign of retaliatory harassment by refusing to provide medical attention for Plaintiff's "further-injured broken left hand." (Id. at ¶¶ 77-78, 84). However, the only allegation describing Defendant Zuck's conduct indicates that he "caused plaintiff to wait for a nurse to arrive at his cell door during medication rounds," which occurred the same afternoon. (Id. at ¶¶ 78-79). This fails to describe retaliatory conduct or denial of medical attention.

### g. Defendant Smail and Dittman

As to Defendants Smail and Dittman, Plaintiff simply alleges that they were among a number of DOC Defendants who "subjected [Plaintiff] to cold and left-over 'food loaf'" (Id. at

¶ 147); however, Plaintiff has not alleged that he suffered any ill health effects or suffered any additional risk of harm associated with the meals to implicate either an Eighth Amendment violation or adverse action sufficient to establish retaliatory conduct. See, e.g., Browns v. Sobina, 2009 WL 5173717, at *7 (W.D. Pa. Dec. 29, 2009).

### h.     Defendants Kradel, Beach, Towner, Wolfe, and Niederriter

Plaintiff claims that Defendants Kradel, Beach, Towner, Wolfe, and Niederriter engaged in a campaign of harassment and retaliation by allegedly withholding his legal mail from the U.S. Marshal Service related to an earlier lawsuit he filed against other SCI-Forest staff members. (ECF No. 80, at ¶¶ 153-162). In particular, Plaintiff alleges that on March 29, 2016, Defendant Kradel delivered legal mail addressed to him from the U.S. Marshal Service, which had been postmarked on February 5, 2016. (Id. at ¶¶ 155-158). The only specific allegation against Defendants Beach, Towner, Wolfe, and Neiderriter is that they were "responsible for handling plaintiff's incoming legal mail and to ensure plaintiff's legal mail is received or inspected in a timely manner." (Id. at ¶ 160). Based on the time elapsed between the postmark and the date he received the legal mail, Plaintiff alleges that all of these Defendants purposely withheld his legal mail "to stop him from pursuing the Section 1983 Civil Rights lawsuit against co-employees at SCI-Forest." (Id. at ¶ 161). Not only are these allegations speculative, at best, they fail to allege any injury suffered by Plaintiff as a result of the alleged retaliatory conduct. The mere delay of less than two months is not sufficient to establish an adverse action for purposes of stating a retaliation claim. See, e.g., Toolasprashad v. Williams, 2009 WL 5103185, at *3 (D.N.J. Dec. 17, 2009) (holding that 63-day delay in receipt of legal mail not sufficient to establish adverse action absent injury).

Based on the foregoing, Plaintiff has failed to adequately allege the personal involvement of any of the above Defendants in any alleged misconduct that rises to the level of a constitutional violation. As a result, Defendants Dimperio, Gilara, Cochran, Snyder, Hulse, Cowan, Jordan, Smith, Dioguardi, Zuck, Smail, Dittman, Kradel, Beach, Towner, Wolfe, and Niederriter, will be dismissed from this case.

### C. Eighth Amendment Conditions of Confinement Claims

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) citing Rhodes, 452 U.S. at 347. These needs include "food, clothing, shelter, sanitation, medical care and personal safety." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

"[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347. Thus, only extreme deprivations are sufficient to establish an Eighth Amendment violation. See Dockery v. Beard, 509 Fed. Appx. 107, 112 (3d Cir. 2013), citing Farmer, 511 U.S. at 834; Rhodes, 452 U.S. at 347

Here, Plaintiff alleges several Eighth amendment claims arising from the conditions of confinement in SCI-Forest's RHU, where he was housed for approximately 100 days. These

claims include the denial of yard, exercise, and fresh air; the denial of showers; and the denial of a second blanket for warmth. Each of these claims will be considered, in turn.

### 1. Denial of Yard, Exercise, and Fresh Air

Plaintiff alleges that during his term of solitary confinement he was subject to "a 24-hour lockdown and an ongoing denial of access to fresh air and one (1) hour yard or exercise…." (ECF No. 80, at ¶ 15). The DOC Defendants seek dismissal of this claim, contending that Plaintiff's complaints do not implicate Eighth Amendment concerns; however, the cases they cite in support of this contention reveal that Defendants either fail to grasp the magnitude of the deprivation alleged by Plaintiff or unduly minimize it. Specifically, Defendants cite two cases from the Eighth Circuit: Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (holding that forty-five minutes of exercise per week is not unconstitutional), and Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (holding that denial of outdoor recreation for thirteen days does not violate the Eighth Amendment). Neither case is applicable here, as Plaintiff is claiming a complete deprivation of outdoor exercise for a period of approximately 100 days.

Moreover, Plaintiff alleges that he suffered "chest pains, leg pain, extreme stiffness of the joints, depression, anxiety, intimidation, mental [and] emotional anguish." (ECF No. 80, at ¶ 16). "Lack of exercise may amount to a constitutional violation where it poses a significant threat to an inmate's physical and mental well-being." Platt v. Brockenborough, 476 F.Supp.2d 467, 471-72 (M.D.Pa. Feb. 21, 2007), citing French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985) (holding that lack of exercise may constitute cruel and unusual punishment where "movement is denied and muscles are allowed to atrophy"); Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir.1996) (allegation of denial of exercise for seven weeks at a time stated claim for Eighth Amendment violation);. Spain v. Procunier, 600 F.2d 189, 199 (9th Cir.1979) (denial of outdoor exercise amounted to cruel and unusual punishment).

13

Accepting Plaintiff's allegations as true at the pleading stage, the Court finds that Plaintiff has sufficiently alleged an Eighth Amendment claim arising from the denial of outdoor exercise during his term of solitary confinement in the RHU, and the DOC Defendants' motion to dismiss the same will be denied.

### 2. Denial of Showers

Plaintiff alleges that while in the RHU he was forced to choose between wearing handcuffs in order to get a shower and removing a medically prescribed arm-sling," which was against medical advice, "or no showering at all." (ECF No. 80, at ¶ 36). Plaintiff alleges further that he was advised that "he would be required to submit to the proper procedures for showering to include the proper restraining of [Plaintiff] for escort to the shower." (Id. at ¶ 42). Although not specifically alleged, it appears Plaintiff is alleging that he was denied showers for approximately three months because he chose not to comply with the handcuff requirement. Thus, any alleged deprivation of showers was due to Plaintiff's voluntary noncompliance with the prison's security protocol, rather than any unconstitutional conduct on the part of Defendants. This claim will be dismissed accordingly.

### 3. Denial of Second Blanket

Plaintiff alleges that he was constantly exposed to "extremely cold temperatures" in the RHU, but his request for a second blanket was denied. Such alleged conditions have been found sufficient to state a cognizable Eighth Amendment claim. See Wilson v. Seiter, 501 U.S. 294, 304 (1991) (noting that "a low cell temperature at night combined with a failure to issue blankets" may be sufficient to establish an Eighth Amendment violation); Whitney v. Wetzel, 2015 WL 632493, at * 6 (M.D. Pa. Feb. 13, 2015)(finding allegations of continual exposure to excessively cold temperature in RHU cell, coupled with denial of extra blanket for thirty days,

was sufficient to state Eighth Amendment claim). Thus, the DOC Defendants motion to dismiss this claim will be denied.

### D. Eighth Amendment Medical Deliberate Indifference Claims

Plaintiff claims that Defendants Neal and Stoddard engaged in deliberate indifference to serious medical needs by interfering with medically prescribed treatment by requiring Plaintiff to remove his arm sling in order to be handcuffed and escorted to the shower. Plaintiff also claims that both Defendants denied him medical attention after Plaintiff's broken hand was "further-injured" when Defendant Neal removed the handcuffs. The DOC Defendants move to dismiss these claims because Defendants Neal and Stoddard are not medical personnel chargeable with the scienter required for an Eighth Amendment violation.[4] The Court agrees.

It is well-settled that non-medical prison officials are generally justified in believing a prisoner is receiving appropriate treatment if the prisoner is under the care of medical personnel. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical [prison official] ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference"). Here, Defendants Neal and Stoddard were aware that Plaintiff had been receiving medical treatment for his broken hand, as evidenced by the arm sling Plaintiff was wearing, and there are no allegations that they prevented Plaintiff from seeing medical personnel after the incident in question. In fact, Plaintiff's allegations indicate that he was seen by a nurse later the same afternoon. Thus, Plaintiff's deliberate indifference claims against Defendants Neal and Stoddard lack merit and will be dismissed.

---

4
The DOC Defendants also move to dismiss this same claim against Defendant Dioguardi; however, the Court has already determined that Defendant Dioguardi will be dismissed from this case for his lack of personal involvement.

### E. Eighth Amendment Excessive Force Claim

Plaintiff claims that Defendant Neal used excessive force to remove the handcuff "that was placed around the pins of the broken left hand of plaintiff." (ECF No. 80, at ¶¶ 71, 76). In particular, Plaintiff alleges that, after he entered the shower cage and placed his hands through the door slot to have his handcuffs removed, Defendant Neal struggled to remove the handcuff "for almost a minute" by "twisting and turning" it and "using the 'ankle cuff' to press extremely hard on the top of the left hand." (Id. at ¶¶ 71-72). Plaintiff alleges further that he began screaming in pain and asked Defendant Neal to stop, but he "continued to twist and turn to cause more intense pain." (Id. at ¶¶ 72-73).

"The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency." Matthews v. Villella, 381 Fed. Appx. 137, 139 (3d Cir. 2010), citing Hudson v. McMillan, 503 U.S. 1, 8 (1992). "When reviewing Eighth Amendment excessive force claims, we must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Matthews, 381 Fed. Appx. At 139 (internal quotation omitted).

"Whether the force applied was excessive requires the examination of several factors, including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v Kyler, 204 F.3d 102, 106 (3dCir. 2000), quoting Whitley v. Albers, 475 U.S 312, 321 (1986).

Applying the foregoing factors to this case, it is apparent from Plaintiff's allegations that there was little need for the application of force, particularly the amount alleged to have been used by Defendant Neal, because Plaintiff was secured in the shower cage with his hands through the door and, thus, was not a threat to anyone's safety. Furthermore, Plaintiff's allegations indicate that Defendant Neal made no effort to temper the force he was using to remove the handcuff after Plaintiff screamed in pain. Taken as true, these allegations are particularly egregious given Defendant Neal's apparent knowledge of Plaintiff's broken hand.

As a whole, Plaintiff's allegations are similar to those upheld by the Third Circuit Court in Robinson v. Danberg, 673 Fed.Appx. 205 (3d Cir. 2016). In Robinson, the plaintiff, a pretrial detainee, alleged that the defendant corrections officer used excessive force when he "allegedly uncuffed [plaintiff] by 'put[ting] his foot on the door and ... yank[ing] the left cuff off[,] ... split[ting] the top of [plaintiff's] hand.'" Id. at 209. The Third Circuit Court reversed the district court's grant of summary judgment in favor of the corrections officer, finding, *inter alia*, that "a reasonable factfinder could conclude [the corrections officer's] use of force was excessive because [the plaintiff], according to his own account, was securely locked in his cell and was offering no resistance when [the officer] removed his handcuffs." Id. at 210.

Based on the foregoing, therefore, the DOC Defendants' motion to dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Neal will be denied.

**F.     Eighth Amendment Failure to Intervene Claim**

Plaintiff has alleged that Defendant Stoddard was present at the time Defendant Neal allegedly used excessive force to remove the handcuffs from Plaintiff, yet he failed to do anything to stop it. (ECF No. 80, at ¶ 73). The Third Circuit Court has held that "a corrections officer's failure to intervene can be the basis of liability for an Eighth Amendment violation

under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). This is precisely what Plaintiff has alleged here.[5] Consequently, the DOC Defendants' motion to dismiss this claim will be denied.

### G. Conspiracy Claim

Finally, Plaintiff claims that Defendants engaged in a "conspiracy to deprive [him] the right to be free from retaliation for filing grievances and lawsuits." (ECF No. 80, at Count 10).

To establish a claim of conspiracy in the context of a civil rights action, the plaintiff must show that two or more conspirators reached an agreement to deprive him of a constitutional right. Royster v. Beard, 308 Fed. Appx. 576 (3d Cir. 2009). In particular, "a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir.1989). In addition, Plaintiff must plead enough facts to plausibly suggest a "meeting of the minds." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010). "As 'the linchpin for conspiracy is agreement,' concerted action, without more, cannot suffice to state a conspiracy claim." Watson v. Sec'y Pa. Dep't of Corrections, 436 Fed. Appx. 131, 137 (3d Cir. 2011), quoting Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992); see also Michtavi v. United States, 435 Fed. Appx. 727, 731 (3d Cir. 2009).

---

[5] Remarkably, the DOC Defendants argue that "'nearly one minute" would not have been enough time for Defendant Stoddard to hear Plaintiff's complaints, realize what was happening, and intervene on his behalf." (ECF No. 84, at p. 22). This argument is beyond comprehension, given Plaintiff's allegations that he was screaming loudly in pain and imploring Defendant Neal to stop, while Defendant Stoddard just "stood there and watched." (ECF No. 80, at ¶¶ 72-73).

18

Here, Plaintiff merely sets forth the conclusory allegation that "All Defendants had intent to harass or retaliate against plaintiff for the filing of numerous grievances and lawsuits against numerous employees at SCI Forest to constitute a conspiracy." This allegation, at most, suggests concerted action, rather than a "meeting of the minds" among the Defendants. In particular, Plaintiff has failed to allege, except in general terms, the approximate time when any alleged agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy. Thus, the amended complaint falls far short of the pleading standard required to state a cognizable claim of conspiracy, and Defendants' motion to dismiss this claim will be granted.

An appropriate Order follows.