IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID JORDAN,<br>    Plaintiff<br><br>vs.<br><br>JOHN WETZEL, et al,<br>    Defendants. | )<br>) C.A.No. 16-cv-307ERIE<br>)<br>)<br>)<br>) Re: Motion for Summary Judgment<br>) ECF No. 180<br>) |

## MEMORANDUM OPINION

District Judge Susan Paradise Baxter

Presently pending before this Court is a motion for partial summary judgment filed by the Commonwealth Defendants. ECF No. 180. Defendants seek summary judgment on these claims:

- An Eighth Amendment claim based on the denial of outdoor exercise against Defendants Ennis, Horton, Ireland, Lopez, Mravintz, Mongelluzzo, Murin, Oberlander, Overmyer, and Sheesley;

- An Eighth Amendment claim based on the denial of a second blanket against Defendants Overmyer, Horton, Oberlander, Ennis, Mongelluzzo, and Ireland;

- An Eighth Amendment claim against Defendant Stoddard based on his failure to intervene in an alleged use of excessive force by another guard; and

- All First Amendment retaliation claims against Defendants Booher, Carter, Ennis, Hill, Horton, Ireland, Lopez, Mravintz, Mongelluzzo, Murin, Murray, Neal, Oberlander, Overmyer, Prinkey, Rowan, Sheesley, Siegel, and Stoddard.

Plaintiff opposed the pending motion. *See* ECF Nos. 196, 202, 207, 208. This motion is ripe for review.

I.  **Standards of Review**

Although a pro se[1] litigant's pleadings are to be construed liberally, *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999), pro se litigants are not excused from substantive and procedural law. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Federal Rule of Civil Procedure 56(a) provides that summary judgment must be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the record and reasonable inferences from it in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the lack of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific

---

[1] Pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (internal citation omitted). Because Mr. Jordan is a pro se litigant, this Court will consider facts and make inferences where it is appropriate.

facts by affidavit or by information in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322.

When considering a motion for summary judgment, the court cannot weigh the evidence or to make credibility determinations but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II. The Exhaustion Requirement of the Prison Litigation Reform Act

The Commonwealth Defendants argue that they are entitled to summary judgment on two claims based on Plaintiff's failure to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act.

The PLRA, 42 U.S.C. § 1997e(a) provides that

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The requirement that an inmate exhaust administrative remedies applies to all inmate suits about prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts must follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that

3

grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). The exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." *Id.* at 83.

It is not a plaintiff's burden to affirmatively plead exhaustion. *Jones v. Bock*, 549 U.S. 199, 217 (2007) ("... failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).[2]

### *The Administrative Process Available to State Inmates*

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

---

[2] A sister court within the Middle District has concisely summarized the burdens of proof on the failure to exhaust defense:

> Failure to exhaust available administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. But once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, as required by the Supreme Court, the ultimate burden of proof remains with the defendant.

*Njos v. Argueta*, 2017 WL 1304301, at *2 (M.D. Pa. Feb. 23, 2017) (internal citation omitted).

4

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner must timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident. Second, the inmate must timely submit a written appeal to intermediate review within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001). The DC-ADM requires that the text of the grievance be legible, understandable and presented in a courteous manner. Section 11(d) of the policy states that the inmate "shall identify individuals directly involved in the events."

### *Plaintiff's utilization of the grievance system*

1. *Denial of exercise*

In his Amended Complaint, Plaintiff identifies Grievance Numbers 583041 and 583043 as related to his claim about the denial of exercise. ECF No. 80, ¶ 114. Defendants move for summary judgment on the basis that nowhere in either grievance (through all levels of review) is the denial of exercise mentioned and they provide the actual grievances in support of their motion. *See* ECF No. 183-5, Grievance 583041, pages 1-13; ECF No. 183-6, Grievance 583043, pages 1-8.

In his Opposition Brief, however, Plaintiff identifies Grievances 584209 and 597377 as the grievances related to this legal claim. Grievance Number 597377, produced in support of his Opposition brief, complains that prison staff are conspiring to restrict Plaintiff's yard and exercise time as retaliation for his filing of other grievances and lawsuits. ECF No. 202-2, Initial

5

Grievance 597377, page 25.[3] Furthermore, in his deposition testimony Plaintiff claims that another grievance (Number 584209, dated August 27, 2015) also relates to this legal claim. *See* ECF No. 202-9, pages 33. This evidence is sufficient to defeat Defendants' motion for summary judgment in this regard. *See Ray*, 285 F.3d at 295 (failure to exhaust must be proven by defendant).

    2. *Failure to intervene against Stoddard*

In his Amended Complaint, Plaintiff points to Grievance Number 584058 as related to this claim. The grievance complains only of Defendant Neal's alleged use of excessive force and mentions Sgt. Kihnslen's presence. It does not mention Stoddard's presence or any alleged failure-to-intervene. *See* ECF No. 183-8, page 2.

In opposition, Plaintiff argues that he was unaware of the "actual spelling of Stoddard's name." *Id. See also* ECF No. 208, pages 30-31. Although incorrect spelling could be excusable, there is no circumstance in which Kihnslen is a misspelled version of Stoddard. The motion for summary judgment will be granted on this claim as Plaintiff has not exhausted his administrative remedies for a failure-to-intervene claim against Defendant Stoddard.

### III. Eighth Amendment—Conditions of Confinement

To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury [or deprivation], and that prison officials inflicted the injury with deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner must show that a condition, either alone or combined with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single,

---

[3] Plaintiff also provided the Initial Review Response on 597377 denying the grievance. *Id.* at 28. *See also* ECF No. 202-4, Appeal to Final Review, page 30.

6

identifiable human need." *Wilson v. Seiter*, 501 U.S. 294 (1991) *citing Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These needs include "food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

"[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Thus, only extreme deprivations are sufficient to establish an Eighth Amendment violation. *See Dockery v. Beard*, 509 Fed. App'x 107, 112 (3d Cir. 2013) *citing Farmer*, 511 U.S. at 834.

An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. *Rhodes*, 452 U.S. at 347; *see also Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 419 (3d Cir. 2000).

The first prong of the *Farmer* test is an objective one: Plaintiff must show that he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834. The second prong of the *Farmer* test is a subjective one, requiring the plaintiff to demonstrate that the defendants acted with deliberate indifference. To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. *Id.* at 837. Thus, "deliberate indifference describes a state of mind more blameworthy than negligence," and requires "more than ordinary lack of due care for prisoner's interests or safety." *Id.* at 835.

7

*1. Denial of Exercise*

Plaintiff alleges that he was denied outdoor exercise and fresh air for approximately one hundred days in the RHU. "There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) *quoting Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir. 1979).[4] The lack of exercise may rise to the level of an Eighth Amendment violation "in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996).

The parties have produced contradictory evidence which precludes summary judgment on this claim. Defendants claim that Plaintiff refused outdoor activity eighty-three times during the one hundred days [*see* ECF No. 183-1, Declaration of Major E. Mongelluzo, page 4; ECF No. 183-3, 17X forms, pages 1-37] and Plaintiff refutes this in his sworn deposition claiming that he was never offered exercise or outdoor yard time [*see* ECF No. 202-9, pages 32-34]. Because of this factual dispute, summary judgment must be denied.

*2. Temperature in cell*

Plaintiff alleges that he was exposed to "extremely cold temperatures" during his hundred days in the RHU, and that his repeated requests for extra blankets were denied. *See* ECF No. 80, ¶ 164(k). Such conditions have been found sufficient to state a cognizable Eighth Amendment claim. *See Wilson*, 501 U.S. at 304 (noting that "a low cell temperature at night combined with a failure to issue blankets" may be sufficient to establish an Eighth Amendment violation); *Whitney v. Wetzel*, 2015 WL 632493, at *6 (M.D. Pa. Feb. 13, 2015) (finding allegations of

---

[4] In a recent denial of certiorari, Justice Sotomayor noted "… to deprive a prisoner of any outdoor exercise for an extended period of time in the absence of an especially strong basis for doing so is deeply troubling-and has been recognized as such for many years."). *Apodaca v. Raemisch*, ___ U.S. ___, 139 S.Ct. 5, 8 (Oct. 9, 2018).

8

continual exposure to excessively cold temperature in RHU cell, coupled with denial of extra blank for thirty days, was enough to state an Eighth Amendment claim).

In support of their motion for summary judgment, Defendants have provided the Declaration of Facility Manager Ross Buscemi. Mr. Buscemi explains that he checked the temperature in Mr. Jordan's cell on January 14, 2016 and found the temperature to be 73.3 degrees Fahrenheit. ECF No. 183-15. And no work orders were submitted requesting maintenance on the heating unit in Mr. Jordan's housing block. *Id.*

In opposition, Plaintiff points to evidence which contradicts Mr. Buscemi's Declaration: an Inmate Request form dated November 1, 2015; a PRC review dated November 12, 2015; and Grievance Number 606233 dated January 11, 2016, all of which indicate Plaintiff's complaints of cold temperatures. *See* ECF No. 208, pages 27-28; ECF No. 207, ¶¶ 11-13. Accordingly, this disputed issue of material fact precludes summary judgment.

### IV. Retaliation

Retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution actionable under section 1983. *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). To state a retaliation claim, an inmate must show (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[5] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. *Id.* at 333.

In support of their motion for summary judgment on the retaliation claims, Defendants claim that Plaintiff's retaliation claims fail at the first prong, arguing:

> "With regard to the constitutionally protected conduct, Plaintiff provided only general information that he filed lawsuits and grievances. Plaintiff does not

9

indicate with any specificity what lawsuit he is referring to, when it was filed, who was involved, or how any of the remaining Defendants in this action could have known about it, such that they could have then employed a retaliatory scheme. claim for retaliation."

ECF No. 181, page 21.

Defendants' argument in this regard is wrong. On page 3 of his Amended Complaint, Plaintiff explains that the campaign of retaliation against him began after he filed: (1) numerous lawsuits against multiple employees at SCI Forest (ECF No. 80, ¶ 12); (2) a state court mandamus action against SCI Forest officials (*id.* at ¶¶ 13, 28;); and frequent grievances against SCI Forest staff (*id.* at ¶ 14). Additionally, Mr. Jordan has attached copies of court and grievance records to his Amended Complaint. *See* ECF No. 80-1; ECF No. 80-2; ECF No. 80-3. Plaintiff has more than sufficiently specified the constitutionally protected conduct which bases his retaliation claims.

An appropriate Order follows.